Commonwealth *v.* Charles C. Lozier, Appellant.

Argued October 22, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*William B. Landis,* for appellant.

*Clarence J. Wing,* Assistant District Attorney, and with him *Joseph B. Jenkins,* Assistant District Attorney, and *Harold A. Scragg,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., March 1, 1929:

Appellant was the defendant in a desertion and non-support proceeding in the court below, instituted upon the complaint of his wife, Ethel M. Lozier, also known as Madame Fenwick; the result of a hearing and re-hearing was an order directing him to pay $100 per month toward her support and this appeal is from that order. The only substantial question involved is whether the learned judge of the court below, in finding that the defendant was of "sufficient ability" to pay the amount fixed, properly exercised the discretion vested in him. Clearly, such finding is not based upon the amount which the evidence shows the defendant is now earning but rather upon the conclusion, as expressed in his opinion, that defendant's testimony "that he only gets $30 per week and is unable to pay $100 a month is not convincing." Our inquiry therefore is whether there is competent evidence justifying this conclusion: Com. ex rel. v. Betts, 76 Pa. Superior Ct. 96.

We would not undertake to substitute our judgment

for that of the court below if we could find upon the record competent evidence to sustain the order as made, or if we found conflicting evidence relative to the defendant's ability to pay. The applicable principles of law have been recently stated by this court in Com. ex rel. v. Milne, 90 Pa. Superior Ct. 68; Com. ex rel. v. Slade, 91 Ibid. 533; and Com. v. Leonard, 93 Ibid. 21. The material facts are not seriously controverted and the question is whether, under all the evidence, $100 per month is an unreasonable allowance, having in view the defendant's present ability to pay and bearing in mind that the allowance should not exceed one-third of his income, to be determined, not solely by the wages he is now receiving, but by also taking into consideration the attendant circumstances indicative of his earning capacity. The exact date of the marriage of the parties does not appear in the testimony but we infer that it must have been about 1922. The prosecutrix was then engaged in partnership with a Miss O'Neil in the business of conducting a beauty parlor in the City of Scranton, at No. 516 Lackawanna Avenue, and the defendant, as the representative of the Penn Cut Glass Company, had rented space in their shop for the display of his samples.

Shortly after the marriage Miss O'Neil retired from the partnership and the defendant succeeded her, his contribution to the enterprise being about $2,000 in cash and merchandise to the value of $1,800. They conducted the partnership successfully for some time and in 1926 incorporated their business as the "Madame Fenwick Beauty Culture Company," with a capital stock of $10,000, divided into two hundred shares, of which the prosecutrix and defendant each owned ninety, and a sister of the prosecutrix the remainder. By January, 1928, the corporation owned five beauty shops, located in different cities and bor-

oughs in that general locality. One of these was at Exeter and because it was less profitable than the others its equipment was removed to the basement of the shop in Scranton. There is evidence that as of January 1, 1928, the assets of the corporation were worth about $19,000 and its liabilities amounted to approximately $2,800. Early in 1928 the parties quarreled and separated and an information for desertion and non-support was made against the defendant. His testimony is to the effect that he met with the assistant district attorney in charge of the proceedings and made a settlement with him, as the representative of the prosecutrix, under the terms of which defendant turned over to him, for delivery to the prosecutrix, all his stock in the corporation, his interest in their household furnishings and in several lots at Muscle Shoals; that it was also agreed that defendant should retain the equipment from the Exeter store and an automobile which had been used by the corporation for several years, and that the proceedings would be withdrawn and defendant released from any liability for future support; but the agreement was not put in writing, nor was any release executed. This testimony was not contradicted by the attorney or by the prosecutrix. Referring to the failure of the prosecutrix to keep her part of the agreement defendant testified: "Q. After you got through dealing with her did you have anything left? A. I hadn't a penny, of any description. Q. Did you carry out the agreement and turn over the stock? A. I certainly did. Q. Did she keep her agreement not to ask you for support? A. No, sir. Q. What happened? A. She sued me for non-support again."

It is quite apparent that the most serious grievance of the prosecutrix arises out of the defendant's subsequent conduct in inducing one of his daughters by a former marriage to open a beauty shop, under his

management, at No. 417 Lackawanna Avenue, Scranton, in the same block in which the corporation's shop was located. Defendant's daughter Melba, living at Wilkes-Barre, borrowed $1,500, rented a room at the above location and opened a shop under the name of "Lozier Beauty Parlor," in which was placed the equipment from the Exeter store. She testified positively that her father has no interest in the business but is employed merely as her manager at a salary of $30 per week. The testimony indicates that the business at this shop has not been particularly successful; the receipts vary from $40 to $125 per day, Saturday's receipts being usually about three times as much as those of other days; the average is about $75 per day and the total expenses, including the defendant's salary, approximate $70 per day. No details with respect to these expenses appear in the testimony. There is evidence that the Lozier shop cut prices and solicited the patronage of the corporation's customers. The conduct of defendant since the separation has not been commendable, but our problem is confined to the ascertainment of his earning capacity. The corporation, now controlled by the prosecutrix and her sister, operates shops in five or six places, has about twenty employes, and the prosecutrix receives a salary of $25 per week. A recent surgical operation has abnormally increased her personal expenses.

Upon a careful review of the entire record, and making due allowance for the interested source of some of the testimony, we are unable to find any evidence to support a conclusion that the earning capacity of defendant exceeds $150 per month. We are therefore of opinion that, until it can be shown that his earning capacity has increased, an order for the support of the prosecutrix should not exceed $50 per month. The original order was entered on July 3 and

the order refusing a modification on September 7, 1928. The conclusions we have reached require us to sustain the assignments of error to these orders to the extent of making a modification of the original order; we also think the defendant should be required to give security.

The original order of the court below is modified and it is now ordered that the appellant pay, through the proper probation officer, to his wife, Ethel M. Lozier, for her support the sum of $50 per month from July 3, 1928, and give bond with sureties to be approved by the court of quarter sessions of Lackawanna County, or a judge thereof, in the sum of $500 for the faithful performance of this order; that he pay the costs in the court below and upon this appeal; and that he stand committed until this order is complied with.